## In re ADAMS CLOAK, SUIT & FUR HOUSE.

(District Court, D. Massachusetts. April 25, 1912.)

No. 17,348.

1. BANKRUPTCY (§ 255*)—LEASEHOLD—RECEIVER'S USE OF PREMISES—ALLOWANCE TO LANDLORD.

Where a bankrupt's lease provided that the landlord might enter and resume possession in case of bankruptcy, and bankruptcy having intervened, the landlord desired immediate possession, but the receivers occupied the premises for two months before surrendering possession, the landlord's claim was not for rent under the lease, but on a quantum meruit for the reasonable value of the temporary use and occupation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 352; Dec. Dig. § 255.*]

2. BANKRUPTCY (§ 255*)—LEASEHOLD—USE BY RECEIVERS—USE AND OCCUPATION—FORM.

Where, in bankruptcy, the landlord demanded surrender of the premises to which he was entitled under the lease, but the bankrupt's receiver remained in possession for two months, during which the landlord was delayed in reletting the premises at a higher annual rental than that reserved in the lease, he was at least entitled to an amount equal to the monthly installments of rent reserved for the time of the receiver's occupancy as compensation for use and occupation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 352; Dec. Dig. § 255.*]

In Bankruptcy. Proceedings against the Adams Cloak, Suit & Fur House. On petition to review a referee's order allowing the landlord's claim of $33,500 for the receiver's use and occupation of petitioner's premises. Affirmed.

Lee M. Friedman, for receiver.
James J. McCarthy, for landlord.

DODGE, District Judge. The involuntary petition upon which adjudication in this case was made was filed June 30, 1911. Receivers were appointed by the court July 1, 1911. On July 8, 1911,

their petition for authority to conduct and continue the bankrupt's business until a trustee should be appointed was granted by the court.

The bankrupt's business was that of dealing in ready made ladies' garments. The bankrupt was conducting it at the time, and had been conducting it for a considerable time before the bankruptcy, in two stores, Nos. 507 and 509 Washington street, in Boston, at the northwesterly corner of Washington and West streets, occuping the ground floor of the two stores, a basement below them, and a floor above one of them. The bankrupt's occupation was under a lease which had three or four years more to run. The rent stipulated in the lease and which the bankrupt had been paying was $33,500 a year, payable in equal monthly installments. On the premises the bankrupt had a stock in trade scheduled by it as worth about $13,872.26.

The receivers did not adopt the lease, but in conducting the business they occupied the premises during the two months of July and August, 1911, after which they surrendered them to the landlord. The lease gave him the right to enter and resume possession in case of bankruptcy. He had desired possession of the premises immediately upon the bankruptcy. The receivers, however, occupied the premises during the two months mentioned, and the petitioner submitted to their occupation, without any application to the court on either side and without any order of court, upon the understanding that a reasonable compensation, to be fixed by the court if necessary, would be allowed them.

The claim made in the landlord's petition for compensation, presented to the referee September 16, 1911, and allowed by him, is for an amount equivalent to two months rent under the lease. The trustee in bankruptcy, who petitions for review of the allowance made, contends that the amount allowed is unreasonable.

There is no dispute that the location of the premises is a highly desirable one for the business carried on by the bankrupt in them. That $33,500 was not in excess of the fair annual rental value of the premises is not and could hardly be disputed. The referee has found from the evidence before him, which is transmitted with his certificate, that if the landlord had obtained possession July 1, 1911, he could have leased the premises at a higher annual rent, and with this finding I agree. The trustee contends, however, that their rental value by the year does not furnish a fair measure of the reasonable worth of their use and occupation during the two summer months mentioned, during which, as is also undisputed, business such as is done in that part of the city is, generally speaking, at its lowest ebb.

[1] I must regard the landlord as entitled to no less compensation that would have been awarded him if the premises had been withheld from him during these two months for the benefit of the estate by an actual order of court. Under similar circumstances, the landlord's claim is not for rent under the lease, but upon a quantum meruit, yet there are several reported cases in which the

rent which would have been paid under the lease has been accepted as a fair measure of the reasonable compensation to be paid by the receiver or trustee for temporary use and occupation. See Re Kelly, etc., Co. (D. C.) 102 Fed. 747; Wilson v. Trust Co., 114 Fed. 742, 52 C. C. A. 374; Re Luckenbill (D. C.) 127 Fed. 984; Re Winfield, etc., Co. (D. C.) 137 Fed. 984; Re Rubel (D. C.) 166 Fed. 131; Id., 170 Fed. 1021, 95 C. C. A. 671. Also, under the Act of 1867, Re Appold, Fed. Cas. No. 499; Re Merrifield, Fed. Cas. No. 9,465.

More than rent according to the lease appears to have been allowed, under special circumstances, in Re Grignard, etc., Co., 155 Fed. 699, though the amount was later reduced somewhat (Id., 158 Fed. 557); it appearing that the estate was insufficient to pay all the preferred claims allowed in full.

[2] The trustee is, of course, right in trying to keep the expenses of administering the estate down to the lowest possible figure. But, for the fact that the landlord was delayed during those two months in reletting the premises at a higher annual rent than that which he had been getting under the lease, it might be possible to say that to give him compensation at the annual rate during the least valuable part of the year is to give him more than reasonable compensation. Had it appeared that no one would probably have leased the premises before September 1st, it might well have been better for the landlord to have the receiver or trustee occupy, even at a much smaller rent, than to let the premises stand vacant. In view of the fact that his premises have been in effect withheld from him against his wish, a rule of compensation can hardly be just which fails to take into account the actual result to him. Delaying him in the enforcement of his legal right to the premises was justifiable only for the purpose of avoiding unnecessary loss to others, and only upon the assumption that, if he received full and equitable compensation there would be no real loss to him. See Re Chambers, etc., Co. (D. C.) 98 Fed. 865, 867. In so far as the compensation awarded him leaves him less well off than he would have been if he could have got the premises earlier, it falls short of being full and equitable. In view of the fact that two months rent at the annual rate will not give him all that he might have got but for the occupation by the receiver, I do not see how I can properly give him any less.

The order of the referee is therefore affirmed and approved.