In re HERSEY.

(District Court, N. D. Iowa, E. D. August 3, 1909.)

No. 601.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 4*)—NATURE OF INSTRUMENT—EFFECT—RIGHT OF ASSIGNEE.

A written instrument, by which a bankrupt conveyed his entire stock of merchandise and substantially all his property not exempt from execution to a trustee in trust to effect a settlement and composition with his creditors, authorizing the trustee to sell the property in bulk or at retail, and after taking from the proceeds his expenses and compensation for his services to distribute the remainder among the creditors of the bankrupt, etc., and if he was not able to make such composition to account for the proceeds to the bankrupt, though not a technical assignment for the benefit of creditors within the state statute, was such in effect, and constituted the trustee the bankrupt's agent.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Dec. Dig. § 4.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. BANKRUPTCY (§ 288*)— PROPERTY IN THE HANDS OF THIRD PERSONS—CLAIMS
—ADJUDICATION—JURISDICTION.

   A bankrupt conveyed all his property not exempt from execution to a
trustee to make a composition with his creditors, authorizing the trustee
to sell the property in bulk or at retail, and after taking from the proceeds
his expenses and compensation for his services to distribute the remainder
among the creditors, and if there was a surplus, or if he was unable to
make a compromise, to account to the bankrupt. The trustee was unable
to make the composition, and, bankruptcy, having intervened, turned over
to the trustee in bankruptcy the assets received by him, except $409 receiv-
ed from sales of goods at retail, which he claimed as compensation and
for expenses. *Held*, that since such claim was not merely colorable, but
made in good faith under a claim of right by virtue of the conveyance, it
was determinable only by a plenary suit, and not in a summary manner
by the referee in bankruptcy.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig.
§ 288.*]

   In Bankruptcy. On petition of Wm. S. Hart for review of an or-
der of the referee summarily requiring him to pay $369 to the trustee.
See, also, 171 Fed. 1001, 1004.

   Wm. S. Hart, in pro. per.
   Douglas Deremore, for trustee.

   REED, District Judge. January 22, 1908, the bankrupt, then a
merchant at Waterville, in Allamakee county, by an instrument in
writing conveyed to the petitioner, Wm. S. Hart, his stock of mer-
chandise and substantially all of his property, not exempt from exe-
cution, in trust for the purpose of effecting a settlement and com-
position with his creditors. The instrument authorized Hart to sell
the property in bulk or at retail, and after deducting from the pro-
ceeds his expenses and compensation for his services to distribute
the remainder among the creditors of the bankrupt if he effected a
settlement or composition with them, and, if not, required him to
account therefor to the grantor, or to such other person or official
as may be entitled to receive the same. Hart at once took possession
under such instrument of all of the property of the bankrupt not ex-
empt from execution under the Iowa statute, and endeavored to ef-
fect a composition with his creditors, but, after a good deal of cor-
respondence and negotiations with them, was unable to do so, and on
February 17, 1908, he advised the bankrupt to file a voluntary peti-
tion in bankruptcy, which the bankrupt did on February 24th, and
he was adjudged bankrupt thereon that day. During the time that
Hart was so in possession and control of the property, he continued
to sell therefrom at retail, and received from such sales about $409.
He incurred expenses in making such sales and in caring for the prop-
erty, and devoted a good deal of his own time to the management
thereof and in endeavoring to effect a settlement with the bank-
rupt's creditors. Upon the appointment of the trustee in bankrupt-
cy, Hart turned over to him all of the remaining property of the
bankrupt in his custody or under his control, but retained the $409
to cover his compensation and the actual expenses incurred in the
management of the property under the conveyance thereof to him.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The trustee thereupon applied to the referee for an order requiring Hart to show cause why he should not be required to turn over this $409 to the trustee. In response to a notice of such application, Hart appeared before the referee and claimed the right to retain the $409 both as against the bankrupt and the trustee, and objected to the jurisdiction of the referee to require him to turn the same over to the trustee, or to determine the question of his right thereto. The referee overruled the objections and entered a summary order requiring Hart to turn over to the trustee $369 of such $409, permitting Hart to retain the remainder for the actual expenses incurred by him in caring for the property. It is this order of the referee that Hart petitions to have reviewed.

It appears from the evidence that, before the instrument in question was made, the bankrupt had on January 17th made a mortgage for $300 upon his stock of merchandise to Hart, and on January 18th one for $2,800 to the Waukon State Bank for the benefit of the B. A. Hersey estate. These mortgages, upon being recorded, at once precipitated a demand by all other creditors of the bankrupt for payment of or security for their debts, and some of them commenced, and others threatened, attachment proceedings against him. In this situation the bankrupt sent for Hart at Waukon to come to Waterville to counsel with and advise him what to do. In response to such request Hart went to Waterville, and as a result of the conference with the bankrupt it was deemed best to make the instrument in question, and Hart at once took possession thereunder. The instrument provides that Hart shall be first paid from the proceeds of the sale of the property for his services and for the expenses that may be incurred by him in caring for and disposing of the same, and in effecting a settlement with the creditors of the bankrupt, or in attempting to do so. While the instrument is not an "assignment" under the state statute for the benefit of creditors, such is its effect, and Hart thereunder was but the agent of the bankrupt, with the rights given him by the instrument, for the sale of the property and distribution of its proceeds as provided therein. Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814.

Hart recognized this, and promptly turned over to the trustee in bankruptcy upon his appointment and qualification as such the portion of the property not disposed of by him, but claimed the right as against the bankrupt and the trustee to retain the $409 as compensation for his services rendered and expenses incurred prior to the bankruptcy, and at the very threshold of the proceedings challenged the jurisdiction of the referee to determine the question of his right thereto. While Hart was not, as before stated, technically an assignee for the benefit of creditors under the state statute, the claim made by him to the $409 is within the principle of the rule held in Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413. The determination of the question of Hart's right to this $409 does not pertain to the bankruptcy proceeding proper, but is a question arising in the course of such proceeding which should be determined by a plenary action or suit against him in a court hav-

ing jurisdiction to determine such question. Bush v. Elliott, 202 U. S. 477–482, 26 Sup. Ct. 668, 50 L. Ed. 1114, and cases cited.

In Re Walsh Bros. (D. C.) 163 Fed. 352, the question was considered and determined when a referee or court of bankruptcy might, and when they might not, make a summary order requiring third parties to turn over to the trustee property coming into their possession prior to the bankruptcy. After referring to decisions of the Supreme Court, it is said in that case:

"The rule deducible from these decisions is that, where a third party holds property at the time of the bankruptcy merely as agent or bailee of the bankrupt, he may be summarily required by the referee or the court of bankruptcy to turn the property over to the trustee; but where he acquires the possession prior to the bankruptcy, and claims the right to hold the property as against the bankrupt or the trustee, then the authority of the referee, and of the court of bankruptcy in summary proceedings, is limited to determining whether the claim made is colorable merely, or is in fact adverse to the bankrupt, and according as it determines that question will it deny or retain jurisdiction of the controversy. First National Bank v. Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051."

It is obvious that the claim of Hart to this fund is not a merely colorable one, but it is one made in apparent good faith under a claim of right thereto, by virtue of the conveyance of the bankrupt to him, and his possession thereunder for more than a month before the bankruptcy. The merits of such claim, however, will not be considered, for, when it was made to appear before the referee that Hart's possession of the $409 and the instrument under which he asserted his right thereto both antedated the bankruptcy by more than a month, the referee should have dismissed the application of the trustee without prejudice to his right to bring an action or suit to recover the same from Hart in any court having plenary jurisdiction to determine his right thereto.

The order of the referee is therefore vacated, and the matter is referred back to him to enter an order of dismissal of the application of the trustee without prejudice, as above indicated.

It is ordered accordingly.